**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Cardiac Pacemakers, Inc.; and<br>Guidant Sales Corporation, | Civil No. 04-4048 (DWF/FLN) |
| Plaintiffs, | |
| v. | **MEMORANDUM**<br>**OPINION AND ORDER** |
| Aspen II Holding Company, Inc.,<br>d/b/a/ Aspen Healthcare Metrics, LLC, | |
| Defendant. | |

Craig S. Coleman, Esq., John H. Hinderaker, Esq., Gerard M. Nolting, Esq., Faegre & Benson LLP, counsel for Plaintiffs.

Douglas R. Boettge, Esq., and Lawrence J. Field, Esq., Leonard Street and Deinard, Norman K. Beck, Esq., Monika M. Blacha, Esq., Josh Goldberg, Esq., Sheri Klintworth Rudberg,  Esq., Timothy J. Rivelli, Esq., and Dan K. Webb, Esq., Winston & Strawn, counsel for  Defendant.

**Introduction**

The above-entitled matter came before the undersigned United States District Court

Judge on March 17, 2006, pursuant to a Motion to Exclude the Testimony of Donald M.

Nicholson brought by Defendant Aspen Healthcare Metrics, LLC ("Aspen"), and a Motion

for Voluntary Dismissal Without Prejudice brought by Plaintiffs Cardiac Pacemakers, Inc.,

and Guidant Sales Corporation (collectively, "Guidant").  Consistent with the Court's Order

dated March 20, 2006, the Court denies Aspen's Motion to Exclude the Testimony of

Donald M. Nicholson and grants Guidant's Motion for Voluntary Dismissal Without

Prejudice.

## Background

Cardiac Pacemakers, Inc. ("CPI"), manufactures implantable cardiac rhythm

management devices ("CRM devices"), such as pacemakers and defibrillators.  Guidant

Sales Corporation ("GSC"), a wholly-owned subsidiary of CPI, sells the devices.  Aspen is a

healthcare consulting firm.

Guidant has entered into sales contracts with approximately 3,500 hospital

customers for the sale of CRM devices.  Guidant's sales contracts set forth supply terms,

pricing, and contract durations.  Guidant maintains that its complex pricing approval process

is built on analyzing and tailoring contracts according to the specific needs of each

customer.  Guidant asserts trade secret protection for its strategic pricing process, sales

contracts, and each hospital's price and contract terms.  Guidant's sales contracts contain a

confidentiality clause which prohibits Guidant and the hospital customer from sharing

certain business information with a third party without prior written approval.

Aspen enters into consulting contracts with hospitals.  Aspen's clients disclose their

historical purchasing data for CRM devices as well as their vendor contracts to Aspen.

Aspen then uses its knowledge of hospitals' confidential pricing information to advise other

hospital clients what to pay for CRM devices.  During the course of its consulting work,

Aspen develops a cost-savings analysis for each client that projects the amount of money

that Aspen will help the hospital save on its CRM purchases.  The cost-savings figure is

based on sales of devices before and after Aspen's consulting work for the hospital. The

cost-savings analysis is used in reference to a fee guarantee that Aspen provides to the

hospitals, which normally provides that the cost savings achieved by the hospital will be at

least three times Aspen's total fee.

Guidant filed this lawsuit, asserting the following causes of action in its Complaint

(the "Complaint"): (1) tortious interference with confidentiality agreements; (2) tortious

interference with contracts; (3) tortious interference with prospective contractual relations;

and (4) misappropriation of trade secrets. Aspen asserted counterclaims for tortious

interference with prospective contractual relations and defamation.

On February 2, 2006, the Court granted Guidant's Motion for Partial Summary

Judgment on Count 1 of the Complaint and on Aspen's counterclaims and denied Aspen's

Motion for Summary Judgment on Counts 2 through 4 of the Complaint. Although the

Court granted summary judgment in favor of Guidant on Count 1, the Court found that a

question of fact still exists as to the amount of damages.

Following the Court's February 2, 2006 Order, Guidant brought a motion for

voluntary dismissal, requesting that the Court dismiss without prejudice Counts 2 through 4

of the Complaint. Aspen brought a motion to exclude the testimony of Guidant's damages

expert, Donald M. Nicholson.

**Discussion**

**I.     Motion to Exclude the Testimony of Donald M. Nicholson**

Nicholson is a certified public accountant with an extensive background in finance

and accounting.  Nicholson issued two reports in this case.  Nicholson first issued a

preliminary report dated April 11, 2005, followed by a second report dated September 2,

2005.  In his first report, Nicholson used Aspen's cost-savings methodology to calculate

Guidant's damages related to a prototypical hospital.  In his second report, Nicholson

applied Aspen's cost-savings methodology to 12 hospitals for which Guidant claims

damages.  Nicholson calculated Guidant's damages to be $10,319,437.

Before accepting the testimony of an expert witness, the trial court is charged with a

"gatekeeper" function of determining whether an opinion is based upon sound, reliable

theory, or whether it constitutes rank speculation.  *Daubert v. Merrell Dow Pharms., Inc.*,

509 U.S. 579, 589–90 (1993).  In *Daubert*, the United States Supreme Court imposed an

obligation upon trial court judges to ensure that scientific testimony is not only relevant,

but also reliable under the Rules of Evidence.  *Id.* at 579.  In doing so, the Court can

consider:  (1) whether the theory or technique can be and has been tested; (2) whether the

theory or technique has been subjected to peer review and publication; (3) the known rate of

potential error; and (4) whether the theory has been generally accepted.  *Id.* at 593-594. The

purpose of these requirements "is to make certain that an expert, whether basing testimony

upon professional studies or personal experience, employs in the courtroom the same level

of intellectual rigor that characterizes the practice of an expert in the relevant field."

*Kuhmo Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999).

In *Kuhmo Tire*, the Supreme Court determined, "the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Id.* In other words, a trial court should consider the specific factors identified in *Daubert* where they are reasonable measures of the reliability of expert testimony. *Id.* The objective of that requirement is to ensure the reliability and relevancy of expert testimony. *Id.*

Aspen moves the Court to exclude Nicholson's testimony on the grounds that Nicholson's methodology is unreliable and his damages analysis will not assist the trier of fact. Aspen makes four arguments in support of its assertion that Nicholson's testimony is unreliable. First, Aspen contends that Nicholson admits that his methodology is flawed. Second, Aspen contends that Nicholson's methodology fails to isolate the impact of Aspen's involvement from other factors impacting prices. Third, Aspen claims that Nicholson's method is not generally accepted and has not been subjected to peer review. Fourth, Aspen contends that Nicholson's analysis fails to account for consulting conduct by Aspen that is not encompassed by the Complaint.

Guidant asserts that it is preposterous for Aspen to ask the Court to deem Aspen's own cost-savings methodology unreliable and therefore inadmissible, when Aspen induces its clients to pay based on the same cost-savings methodology. Guidant asserts that Nicholson's methodology is reliable because Nicholson chose to rely on Aspen's

understanding of its impact on CRM prices and Aspen's own method for assessing that

impact.  Specifically, Guidant contends that Nicholson relied on Aspen's own cost-savings

reports to its clients in determining that Aspen's methodology was the best method for

assessing damages.  Additionally, Guidant asserts that notwithstanding Guidant's reliance on

Aspen's methodology, Nicholson's damages analysis satisfies the reliability requirements

of Fed. R. Evid. 702.

The Court has reviewed Nicholson's reports and finds that his testimony meets the

legal test for admissibility.  The Court finds that Nicholson's reports are reliable.  Here,

there is no dispute over the fact of loss, but rather the amount of the loss.  Although

Nicholson stated in his preliminary report that Aspen's cost-savings analyses are flawed

"for a number of reasons," the record shows that Nicholson attempted to correct those

flaws.  In fact, Nicholson's efforts to correct flaws in Aspen's cost-savings analyses

resulted in a damages claim that is nearly $5 million less than the amount Aspen

represented to its clients that Aspen saved.  Moreover, experts need not rule out all

alternative causes of a plaintiff's damages.  *See Lauzon v. Senco Products, Inc.*, 270 F.3d

681, 693 (8th Cir. 2001) (stating that an expert's opinion should not be excluded on the

basis that the expert has failed to rule out every possible alternative cause (citations

omitted)).  Finally, the Court finds that some of Aspen's arguments regarding Nicholson's

reports can be "borne out on cross-examination, with credibility determinations and

weighing of evidence left to the trier of fact."  *Minnesota Specialty Crops, Inc. v.*

*Minnesota Wild Hockey Club, LP*, 2002 WL 1763999, *3 (D. Minn. July 26, 2002) (citing

J. Thomas McCarthy, 5 McCarthy on Trademarks § 32:178 (4th Ed.)).

The Court rejects Aspen's assertion that Nicholson's methodology is not generally

accepted and has not been subjected to peer review.  Aspen does not dispute that the before-

and-after model that Nicholson employed is an accepted method for calculating damages.

Instead, Aspen claims that Nicholson's implementation of the model does not comport with

relevant treatises.  However, Aspen's citations to the treatises revisit the notion that a

damage analysis must exclude alternative causes of a defendant's damages, which the Court

addressed above.  The Court also rejects Aspen's assertion that Nicholson's testimony is

unreliable because Nicholson's analysis fails to account for consulting conduct by Aspen

that is not encompassed by the Complaint.  Nicholson stated that he considered the range of

Aspen's services and concluded that its tortious conduct caused Guidant's reduced prices.

(Affidavit of Donald M. Nicholson at ¶ 17.)

Finally, the Court concludes that Nicholson's testimony will assist the jury in

determining damages.  Aspen asserts that Nicholson's opinion will not assist the jury

because Nicholson's damage figure is the same, regardless of the different claims and

different conduct asserted in the Complaint.  Guidant counters that Aspen's practice of

using its knowledge of Guidant's confidential prices to instruct hospitals how much to pay

for Guidant's CRM devices underlies all of Guidant's claims.  Guidant further contends that

the common facts underlying Guidant's claims explain why Nicholson derived one damages

methodology and analysis for all claims.  The Court agrees and finds that Nicholson's

testimony will assist the jury in determining damages. The Court assumes that Guidant will

be able to establish sufficient foundation for Nicholson's testimony and opinions.

Accordingly, the Court denies Aspen's motion to exclude Nicholson's testimony.

**III.     Motion for Voluntary Dismissal Without Prejudice**

Guidant requests that the Court dismiss Counts 2 through 4 of its Complaint without

prejudice in order to streamline the remainder of this litigation. Aspen "takes no position"

on Guidant's motion, but reserves the right to object should Guidant file a claim on the

dismissed counts in the future. (Aspen's Memorandum in Response to Plaintiffs' Motion

for Voluntary Dismissal Without Prejudice at 3-4.)

Pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure, once an answer

or motion for summary judgment has been filed, an action may be voluntarily dismissed

only upon order of the Court and upon such terms and conditions as the Court deems

proper. The decision to grant dismissals under Rule 41 rests upon the discretion of the

Court. *Hamm v. Rhone-Poulenc Rorer Pharm. Inc.*, 187 F.3d 941, 950 (8th Cir. 1999).

The Court should consider the following factors in ruling on a motion for voluntary

dismissal: whether the party has provided a proper explanation for its desire to dismiss;

whether dismissal will result in a waste of judicial resources; whether dismissal will

prejudice defendants; and whether the dismissal is sought to escape an adverse decision or

to seek a more favorable forum. *Id.*

Consistent with the Court's remarks off the bench, the Court grants Guidant's

Motion for Voluntary Dismissal of Counts 2 through 4 of Guidant's Complaint. The

applicable factors favor approval of Guidant's motion to dismiss the remaining claims

without prejudice. In its Order dated February 2, 2006, the Court granted summary

judgment in favor of Guidant on Count 1 of Guidant's Complaint and denied Aspen's motion

for summary judgment on Counts 2 through 4. Thus, Guidant is not attempting to evade an

adverse ruling. Dismissing Counts 2 though 4 would streamline the litigation and conserve

judicial resources. Finally, the Court finds that Aspen will not be prejudiced if Guidant is

allowed dismissal without prejudice.

### Conclusion

In accordance with the Court's Order dated March 20, 2006, **IT IS HEREBY ORDERED**

**THAT:**

1.      Aspen's Motion to Exclude the Testimony of Donald M. Nicholson (Doc. No. 214) is

**DENIED**.

2.      Guidant's Motion for Voluntary Dismissal Without Prejudice (Doc. No. 228)

is **GRANTED**.

        a.      Counts II, III, and IV of Guidant's Complaint are **DISMISSED**

**WITHOUT PREJUDICE**.


Dated:  April 20, 2006                     s/Donovan W. Frank
                                           DONOVAN W. FRANK
                                           Judge of United States District Court