UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Cardiac Pacemakers, Inc.; and
Guidant Sales Corporation,

Civil No. 04-4048 (DWF/FLN)

Plaintiffs,

v.

**MEMORANDUM
OPINION AND ORDER**

Aspen II Holding Company, Inc.,
d/b/a/ Aspen Healthcare Metrics, LLC,

Defendant.

---

Craig S. Coleman, Esq., John H. Hinderaker, Esq., Gerard M. Nolting, Esq., Faegre & Benson LLP, counsel for Plaintiffs.

Douglas R. Boettge, Esq., Byron E. Starns, Esq., and Lawrence J. Field, Esq., Leonard Street and Deinard, Norman K. Beck, Esq., Monika M. Blacha, Esq., Josh Goldberg, Esq., Sheri Klintworth Rudberg, Esq., Timothy J. Rivelli, Esq., Dan K. Webb, Esq., and Kevin Banaski, Esq., Winston & Strawn, counsel for Defendant.

---

**Introduction**

This matter is before the Court pursuant to several Motions in Limine brought by Defendant Aspen Healthcare Metrics, LLC ("Aspen"), and Plaintiffs Cardiac Pacemakers, Inc., and Guidant Sales Corporation (collectively, "Guidant").

**Background**

Cardiac Pacemakers, Inc. ("CPI"), manufactures implantable cardiac rhythm management devices ("CRM devices"), such as pacemakers and defibrillators. Guidant Sales Corporation ("GSC"), a wholly-owned subsidiary of CPI, sells the devices. Aspen is a healthcare consulting firm.

Guidant's Complaint asserts the following causes of action: (1) tortious interference with confidentiality agreements; (2) tortious interference with contracts; (3) tortious interference with prospective contractual relations; and (4) misappropriation of trade secrets. In its Answer, Aspen counterclaims for tortious interference with prospective contractual relations and defamation.

On February 2, 2006, the Court granted Guidant's Motion for Partial Summary Judgment on Count 1 and on Aspen's counterclaims, and denied Aspen's Motion for Summary Judgment on Counts 2 through 4. Although the Court granted summary judgment in favor of Guidant on Count 1, the Court found that a question of fact still existed as to the amount of damages. Following the Court's February 2, 2006 Order, the Court granted Guidant's Motion for Voluntary Dismissal Without Prejudice of Counts 2 through 4.

Trial in this case is scheduled to begin on Monday, May 15, 2006. The issue for trial is the amount of damages that Guidant has sustained on Count 1, tortious interference with confidentiality agreements. The Court ruled on many of the parties' motions in limine off the bench on May 2, 2006, at the pretrial conference. The Court's remaining rulings follow.

## Discussion

**I.  Guidant's Motion to Preclude Aspen from Arguing that Guidant's Confidentiality Agreements Do Not Protect its Pricing Information**

The Court granted summary judgment for Guidant on its tortious interference claim, finding that Aspen intentionally induced hospitals to breach the confidentiality agreements included in Guidant's sales contracts with hospitals without justification.  Following the Court's February 2 Order, Aspen admitted that "[t]he [confidentiality] clause identifies the 'contract' as something that the parties agree is confidential, and thus when the Court ruled that Aspen was a 'third party,' [Aspen] should not have obtained the Guidant contract."  (Ex. Index to Pl.'s Mem. in Supp. of Motions in Limine, Ex. 8.)  Aspen then reported that, pursuant to the Court's order, it no longer sought Guidant's contracts from its clients.  Aspen further asserted that prices in a hospital's own supply cost files or closed receipt files were not subject to Guidant's confidentiality clause.  (*Id.*)

Based on these assertions, Guidant anticipates that Aspen will attempt to argue at trial that only its practice of obtaining contracts, rather than the confidential pricing information itself, should be considered when calculating damages.  Thus, Guidant requests that the Court preclude Aspen from arguing that Guidant's confidentiality agreements do not protect Guidant's pricing information.  Specifically, Guidant seeks to exclude any testimony, evidence, and argument that Aspen does not violate Guidant's confidentiality agreements by obtaining Guidant's contract prices from hospital supply cost files, computer systems, or any similar source.

Aspen asserts that it is entitled to present evidence regarding non-confidential pricing information. Aspen contends that it can demonstrate that Guidant's claim for damages must be reduced because Aspen did not always learn of Guidant's pricing information as a result of Aspen's tortious conduct. Aspen contends that the Court's February 2 Order does not construe the confidentiality provision to apply to pricing information that is found in sources other than the contract.

In its February 2 Order, the Court intended to hold that Guidant's confidentiality provision includes both the contract and the pricing information contained within the contract. This remains the intent of the Court. Guidant has consistently maintained that its pricing information is confidential and protected by the confidentiality agreements. For example, Count 1 of Guidant's Complaint alleged that, "Aspen intentionally induced [hospitals] to breach the confidentiality provisions in their contracts by obtaining the contracts' pricing information from them" and by "intentionally inducing these customers to provide Guidant Sales' confidential pricing information to Aspen." (Compl. at ¶¶ 34-36.) To hold that the confidentiality provision covers only the physical contract, but not the terms of the contract, would render the provision meaningless. Accordingly, the Court grant's Guidant's motion to exclude any testimony, evidence, and argument that Aspen does not violate Guidant's confidentiality agreements by obtaining Guidant's contract prices from hospital supply cost files, computer systems, or any similar source.

Evidence that Aspen does not violate Guidant's confidentiality agreements by obtaining Guidant's contract prices from hospital supply cost files, computer systems, or

any similar source including, for example, pricing proposals from the negotiations process ("negotiation exception"), will remain presumptively inadmissible unless and until Aspen can demonstrate in a Rule 104 offer of proof that Aspen has obtained Guidant's pricing information from a source other than the hospitals' contracts with Guidant, that Aspen used that pricing information in its consulting arrangement with one or more of the twelve hospitals at issue, and that Aspen has the documentation that confirms when Aspen received the information.

Unlike at the summary judgment stage, Aspen now strenuously argues that pricing information found outside of Guidant's contracts is non-confidential. As noted at the pretrial conference, there is scarcely little foundation on the record for that assertion. Consequently, it remains to be seen, whether Aspen can establish the foundation for the notion that Aspen did not use Guidant's contracts to gain its knowledge of Guidant's pricing information. Finally, the Court would caution the parties that while it is permissible to present evidence regarding certain industry-wide practices, the parties will have to be vigilant about not "opening the door" to the issue of whether Guidant's competitors' practice is to maintain confidentiality of pricing information.

## II. Guidant's Motion to Preclude Aspen from Arguing that Guidant's Damages are not Caused by Aspen's Tortious Conduct

Guidant requests that the Court preclude Aspen from arguing that Guidant's damages are not caused by Aspen's tortious conduct. Guidant asserts that despite the Court's February 2 Order granting summary judgment in favor of Guidant on causation, Aspen now argues that Guidant's lower prices were actually caused by consulting practices that were unrelated to Aspen's knowledge of Guidant's confidential prices. Guidant notes that Aspen's request for reconsideration of the February 2 Order did not claim that the Court's ruling on causation was infirm. Given the Court's ruling, Guidant asserts that Aspen should be precluded from relitigating causation. Guidant agrees, however, that Aspen is permitted to argue that competition, market forces, and changing technology may have caused Guidant's prices to decline. Aspen, on the other hand, asserts that it should be entitled to present evidence that factors other than its tortious conduct caused Guidant's prices to decline.

The Court held in the February 2 Order that Aspen's tortious conduct is a direct cause of Guidant's damages. The Court did not rule that there was only one direct cause. Because the Court has resolved this issue, Aspen is precluded from arguing that its tortious interference with Guidant's confidentiality agreements was not a direct cause or a substantial factor in causing damages. Aspen is also precluded from presenting evidence, testimony, and argument at trial claiming that Guidant's damages are attributable to Aspen's non-tortious activity, unless Aspen can provide sufficient foundation in the form of

testimony from a physician and/or hospital administrator that the contract and pricing information was secured, based upon Aspen's ability to align a particular doctor at one of the twelve hospitals with Guidant or the hospital.

The Court assumes that each party will provide the jury with background regarding why consultants are hired, the value of such consultants, and the industry-wide practice regarding consultants.  However, that is quite different than testifying that physician alignment is the most important reason for price reductions.  Consequently, the Court grants Guidant's specific request to preclude Aspen from arguing that Aspen's meetings with doctors, rather than Aspen's use of Guidant's confidential prices, caused Guidant's prices to fall**.**  Such testimony shall be presumptively inadmissible until sufficient foundation is established.  The Court also seriously questions whether foundation can be established for Thomas J. Lafferty's assertion that Aspen's non-tortious activity to create physician-alignment is the most important factor in Aspen's work in helping hospitals reduce their costs.  (Decl. of Thomas J. Lafferty, March 9, 2006, at ¶¶ 3-11.)  Accordingly, the Court grants Guidant's motion.

## III.     Guidant's Motion to Exclude Certain Expert Opinions and Evidence

Arthur H. Cobb, Aspen's expert, previously submitted reports on May 19, 2005 and September 30, 2005.  Guidant requests that the Court exclude several charts included in a report that Aspen submitted on April 21, 2006, titled "April 21, 2006 Report of Cobb and

Associates, Ltd." (the "April 21 Report").[1]  Guidant contends that the April 21 Report should be excluded for three reasons.  First, Guidant contends that the April 21 Report's damages estimate is based on a new methodology that has never been disclosed or explained in a Fed. R. Civ. P. 26(a)(2) disclosure.  Second, Guidant contends that the April 21 Report does not supplement any prior opinion as required under Fed. R. Civ. P. 26(e).  Specifically, Guidant contends that the April 21 Report contains new data, analyses, charts, and calculations. Third, Guidant contends that the April 21 Report is untimely under Fed. R. Civ. P. 26(e)(1) and 26(a)(3) and that Guidant will be prejudiced if the report is admitted.  Guidant contends that it will be prejudiced because there is not enough time to file a *Daubert* motion, conduct depositions, and prepare a trial response to the April 21 Report.

Aspen requests that the Court exercise its discretion to admit Cobb's untimely April 21 Report.  Aspen contends that Guidant will not suffer prejudice if the report is admitted because the charts address issues that Nicholson raised in his report or that are important in this case and that Guidant cannot be surprised by the charts.  Additionally, Aspen asserts that Cobb's April 21 Report is a proper supplement.  The Court disagrees.

The April 21 Report lacks a full statement explaining the analyses, calculations, methodologies, and opinions as required by Fed. R. Civ. P. 26(a)(2).  The report also constitutes an improper supplementation of Cobb's earlier reports under Fed. R. Civ. P.

---

1   Guidant does not object to Tables A, G, J, and N, which update and supplement tables previously disclosed in Cobb's September 30 report.  Thus, these tables will be admissible at trial.

(Footnote Continued on Next Page)

26(e). The April 21 Report contains new materials, such as an alternative damages calculation from Nicholson's. Finally, the April 21 Report is untimely under Fed. R. Civ. P. 26(e)(1) and 26(a)(3), and it would prejudice Guidant if the report were admitted on such short notice before trial is scheduled to begin. To admit Cobb's April 21 Report as evidence would render Rule 26 meaningless. Additionally, the Court seriously questions whether foundation exists for Cobb's statements regarding his alleged source of the reduction in Guidant's prices. Therefore, the Court grants Guidant's motion in this regard.

### IV.   Aspen's Motion to Preclude Guidant from Referencing Guidant's Competitors' Prices as "Confidential" or from Suggesting that Aspen Obtained Guidant's Competitors' Prices Unlawfully[2]

Aspen asserts that the Court should preclude Guidant from referencing Guidant's competitors' prices as "confidential" because this information is not relevant to any issue of disputed fact. Likewise, Aspen asserts that the lawfulness or unlawfulness of Aspen's access to Guidant's competitors' prices is irrelevant and should be excluded. Aspen contends that it will show at trial that the impact of prices charged by Guidant's competitors, among other things, caused Guidant's prices to decline. Aspen contends, however, that whether Aspen's access to Guidant's competitors' prices was lawful or

---

(Footnote Continued From Previous Page)

2   The Court granted this motion in part off the bench at the pretrial conference. Specifically, the Court determined that, until further ruling, Guidant is precluded from introducing evidence that a $10 million liquidated damages provision would provide a reasonable amount of compensation should Aspen misuse one hospital's prices from St. Jude. The Court found that this evidence should be excluded under Rules 104 and 403

(Footnote Continued on Next Page)

unlawful, or whether Guidant's competitors' prices were confidential, does not make it more or less probable that Guidant's prices in fact declined because Guidant lowered its prices to meet Guidant's competitors' prices. Further, Aspen asserts that such information would improperly and unfairly prejudice Aspen.

Guidant, on the other hand, asserts that its competitors' position on pricing confidentiality and the confidentiality clauses in Guidant's contracts are directly relevant to rebutting Aspen's claimed entitlement to Guidant's prices. The Court grants Aspen's motion on the basis that the evidence is irrelevant. References to Guidant's competitors' prices as "confidential" or suggestions that Aspen obtained Guidant's competitors' prices unlawfully are presumptively inadmissible unless Guidant can establish during trial in a Rule 104 offer of proof that Aspen has suggested that these prices are available to the public or otherwise not confidential, or until Aspen has made such references relevant in some way.

## V. Aspen's Motion to Exclude Certain Testimony of Guidant Damages Expert Donald Nicholson

On April 21, 2006, the Court denied Aspen's Motion to Exclude the Testimony of Donald M. Nicholson. At that time Nicholson had issued two reports in this case — dated April 11, 2005, and September 2, 2005. On April 15, 2006, Nicholson issued a third report. In response to Nicholson's third report, Aspen requests that the Court preclude Nicholson from testifying that (1) Guidant is entitled to lost profits based on "an admittedly

---

(Footnote Continued From Previous Page)
of the Federal Rules of Evidence.

flawed alternative damages model"; and (2) Guidant is entitled to collect the costs of commissions and royalties. (Aspen's Mem. in Supp. of Mot. in Limine to Exclude Certain Test. of Guidant Damages Expert Donald Nicholson at 1.)

The Court denies Aspen's request to preclude Nicholson from testifying that Guidant is entitled to lost profits based on the damages model that Nicholson used in the April 15, 2006 report. In both his second and third reports, Nicholson applied Aspen's cost-savings methodology to twelve hospitals for which Guidant claims damages. Nicholson contends that Aspen's cost-savings analyses at the twelve hospitals reflect approximately $14 million in cost savings. Nicholson maintains, however, that Aspen's calculations are flawed and that Guidant's damages are actually $10,319,437. Nicholson's most recent report did not change the analysis performed in Nicholson's September 5, 2005 report. The Court has already rejected Aspen's contention that Nicholson's methodology was unreliable in the Court's Order denying Aspen's Motion to Exclude the Testimony of Donald M. Nicholson. Thus, the Court sees no reason to revisit Aspen's contention that Nicholson's model is flawed. Moreover, the Court will not preclude Nicholson from presenting Aspen's cost-savings calculations to the jury. However, the Court will not permit Nicholson nor any other witness to explain to the jury what constitutes the proper measure of damages.

The Court grants Aspen's request to preclude Nicholson from testifying that Guidant is entitled to collect commissions and royalties. In his third report, Nicholson asserts that Guidant is entitled to recover its sales representatives' lost commissions and royalties,

11

assuming Guidant would pay these costs to those who would have otherwise received them. On the record before the Court, the Court finds that, as a matter of law, the commissions and royalties constitute direct costs that must be subtracted from the lost profit calculation. *See Universal Power Systems, Inc., v. Godfather's Pizza, Inc.*, 818 F.2d 667, 673-74 (8th Cir. 1987).

## VI. Aspen's Motion to Admit Guidant Pricing Information Beyond Contract "Confidential Information" at Issue in Damages Trial

The Court denies Aspen's motion for the reasons set forth in Section I, *supra*.

## VII. Aspen's Motion to Preclude Guidant from Referencing Aspen's Abandoned Cost-Facts Business Plan

Aspen requests that the Court preclude Guidant from referencing "CostFacts," a business plan that Aspen considered developing in mid-2004. CostFacts was an online subscription service that would have allowed subscribing hospitals to access comparative CRM pricing data. Aspen contends that reference to CostFacts should be excluded under Fed. R. Evid. 401 and 402 because it is not relevant to any issue before the jury. Additionally, Aspen contends that reference to CostFacts should be excluded under Fed. R. Evid. 403 because it is unfairly prejudicial, it would confuse the issues, and it would mislead the jury. Guidant, on the other hand, asserts that CostFacts is relevant for impeachment and because it demonstrates the economic value of Guidant's confidential pricing information.

The Court grants Aspen's motion under Rule 403. The Court finds that the probative value of statements referencing Aspen's abandoned CostFacts plan is substantially

12

outweighed by the danger of unfair prejudice to Aspen. Such statements are presumptively inadmissible unless Guidant can establish in a Rule 104 offer of proof that Aspen has implied that Guidant's confidential pricing information is not confidential, or made references to CostFacts relevant in some other way.

## Conclusion

**IT IS HEREBY ORDERED THAT:**

1. Guidant's Motion in Limine to Preclude Aspen from Arguing that Guidant's Confidentiality Agreements do not Protect its Pricing Information (Doc. No. 264) is **GRANTED**.

2. Guidant's Motion in Limine to Preclude Aspen from Arguing that Guidant's Damages are not Caused by Aspen's Tortious Conduct (Doc. No. 264) is **GRANTED**.

3. Guidant's Motion in Limine to Exclude Certain Expert Opinions and Evidence (Doc. No. 332) is **GRANTED**.

4. Aspen's Motion in Limine to Preclude Guidant from Referencing Guidant's Competitors' Prices as "Confidential" or from Suggesting that Aspen Obtained Guidant's Competitors' Prices Unlawfully (Doc. No. 272) is **GRANTED**.

5. Aspen's Motion in Limine to Exclude Certain Testimony of Guidant Damages Expert Donald Nicholson (Doc. No. 283) is **DENIED IN PART** and **GRANTED IN PART**.

6. Aspen's Motion in Limine to Admit Guidant Pricing Information Beyond Contract "Confidential Information" at Issue in Damages Trial (Doc. No. 288) is **DENIED**.

7. Aspen's Motion in Limine to Preclude Guidant from Referencing Aspen's Abandoned Cost-Facts Business Plan (Doc. No. 301) is **GRANTED**.

Dated: May 8, 2006         s/Donovan W. Frank
                           DONOVAN W. FRANK
                           Judge of United States District Court